BENJAMIN B. WAGNER
United States Attorney
RICHARD J. BENDER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
(916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>ROBERT DUNCAN,<br><br>        Defendant. | CASE NO. 2:12-CR-0255 GEB<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM AS TO DEFENDANT ROBERT DUNCAN**<br><br>Sentencing: December 20, 2013 @ 9:00 a.m. |

## I.  OVERVIEW

On September 21, 2012, the defendant pled guilty to Count One of the Indictment which charges the manufacture of at least 100 marijuana plants. The defendant has filed timely objections to two sentence guideline calculations in the PSR, that is, the +2 maintaining a place and the +2 role in the offense (leadership). Defendant's memo also seeks a downward variance pursuant to § 3553(a) factors.

As stated below, the government believes that the PSR is correct in making the leadership assessment but incorrect as to the assessment for maintaining a place (which is a much closer call). The government also supports a limited downward variance.

## II.  LEADERSHIP ROLE

The PSR correctly assessed two points for the defendant's leadership under USSG § 3B1.1(c). The defendant was the manager of the large indoor warehouse. See, Attachment A to Plea Agreement, line 23-24. When the warehouse was searched on October 4, 2011, approximately 2,000 marijuana plants and 40

pounds of finished product were found. Additionally, receipts found at the warehouse indicated that the defendant had purchased much of the marijuana cultivation equipment and materials found inside the warehouse using a company credit card. While he was not the owner, nor head decision maker for the warehouse growing operation (that was Matthew Davies and Lynn Smith), defendant Duncan was the on-site manager at the warehouse, which employed several persons on an ongoing basis. At the time of the search fourteen people were located at the site. So, a leadership assessment is appropriate.

While it is true that, as the defendant points out, he was in a much lower position in the organization than Matthew Davies or Lynn Smith, and that there were other persons, not prosecuted who could also be considered middle managers, defendant Duncan also shared leadership responsibilities within the conspiracy. He was the master-grower for the warehouse operation. Although his experience largely consisted of the knowledge gained from the much smaller residential grow facility located on Autumn Chase Circle, he was the person that was put in charge of the day to day operation at the much larger Vicki Lane warehouse. Thus, the PSR correctly assessed two points for the defendant's role in the offense.

### III.    MAINTAINING A PLACE

The two points for maintaining a place pursuant to USSG § 2D1.1(b)(12), should probably not be assessed under the specific facts of this case. While defendant Duncan lived at, and somewhat controlled access to, the Autumn Chase Circle residence and managed the Vicki Lane warehouse, he did so under the express direction of Davies and Smith. It was Davies and Smith who leased the premises, paid the rent, and ultimately determined who should work there and who should be given access to the facilities. Duncan was a full notch below Davies and Smith, in his control over the two premises.

While Duncan did exercise some control over both premises, on balance, the assessment should not be made. First, unlike leadership role which allows for a gradation [i.e., +4 for larger leadership role involving larger groups, down to +2 for any leadership role], this is an all or nothing assessment. Both Davies and Smith were correctly assessed the two points for maintaining a place in their PSR. They issued the checks to pay the rent and Smith's name is on both the Vicki Lane Warehouse lease and the Autumn Chase house lease. Davies and Smith directed who should be given access to the facilities by hiring the employees who showed up to work there.

In contrast, defendant Duncan had no property interest in either facility, did not pay the rent, and his control over the premises was secondary to Davies and Smith. While Duncan, as the warehouse manager, had some ability to keep outsiders away from the premises, some degree of control was/could be exercised by every person who worked there. So, Duncan's degree of control over the premises under the circumstances should not give rise to the assessment (although this is admittedly a close call and reasonable minds could differ).

Recognizing the above, the government recommends that defendant Duncan not be assessed the two points for maintaining a place. Alternatively, if the Court determines that the assessment is appropriate, that the Court consider the mitigating circumstances around the assessment in determining how much weight to give the resulting Guideline calculations. For example, the Court could consider how the Guideline Range would be impacted if a one-point assessment were made rather than a two point assessment [using § 3553(a) factor – nature and circumstances of the case] as this would more appropriately assign culpability on this issue. [PSR's Guideline Range is 28/I or 78 to 87 months; if reduce by one level it becomes 27/I or 70-87; if reduce by two levels it becomes 26/I or 63-78 months.]

## IV. RESPONSE TO DEFENDANT'S § 3553(a) ARGUMENTS AS TO CHANGING PRIORITIES OF THE DEPARTMENT OF JUSTICE

The defendant's reference to changing Department of Justice priorities are not mitigating circumstances under 3553(a). The defendant points to press reports about statements of the Attorney General and the latest in a series of memoranda dealing with U.S. Department of Justice policy and priorities dealing with marijuana enforcement.[1] Def. memo. at 5. As usual, marijuana defendants read those portions of the memoranda that they find useful and ignore the rest. As the Court correctly pointed out at the sentencing hearing for defendant Davies, changing and ongoing executive branch priorities in no way bind judicial branch decision making. The Controlled Substances Act continues to be the law until amended by Congress and the Sentencing Guidelines apply no matter where the federal court is located. Thus, defendant Duncan's argument in this area should be given little weight.

---

[1] Memorandum to U.S. Attorneys from Deputy Attorney General James M. Cole, dated August 29, 2013. The memorandum expressly states that it ". . . applies prospectively to the exercise of prosecutorial discretion in future cases and does not provide defendants or subjects of enforcement actions with the basis for reconsideration of any pending civil action or criminal prosecution." [Memo. at 4.]

## V. SECTION 3553(a) FACTORS THE GOVERNMENT FINDS APPLICABLE.

On the other hand, some circumstances in this case mitigate in favor of a downward sentencing variance.

### A. The Defendant's Age and Economic Circumstance:

First, the defendant's relatively young age (27-28 at time of offense) and need for employment merit consideration. The defendant graduated from California State University at Chico in 2006. He moved to Los Angeles and was employed at various jobs including a marketing agency (media arts) from which he was laid off. Returning home to Fremont he hit the economic downturn of the economy. His father had recently been laid off from work and his mother's business had taken a downturn. He was conscious of the drain he caused on the family. He was offered a chance to earn $50,000 a year working for a close friend's father (Lynn Smith) who needed someone to set up their marijuana cultivation operation. He had no experience growing or selling marijuana but figured he could learn. Unfortunately, he received legal advice about this activity only from those with a financial interest in the marijuana industry and drank the Coolaide with those around him. In the end, he was soon involved in a fast growing illegal business that caught the attention of law enforcement. In the end, defendant Duncan did not exercise mature judgment but, given his age and circumstances, his faulty decision making is somewhat easier to understand.

### B. Avoiding Sentencing Disparity:

Second, the Court should certainly take into considering the need to sentence defendant Duncan to something less than the five years in prison received by defendant Matthew Davies (with the government's recommendation). Davies received a below-Guideline sentence based, at least in part, on his timely admission of the illegal conduct and willingness to answer questions from law enforcement about that conduct. Here, Duncan similarly admitted his involvement and similarly answered questions about the offense conduct. However, unlike Davies, Duncan was not the head of this organization and Duncan received much less of the economic benefit. Thus, to avoid unwarranted disparity of sentences, Duncan should receive a sentence that is less than that received by Davies.

### C. Likelihood that Defendant Duncan Can Turn His Life Around:

Third, the defendant's prospects for becoming a responsible member of society in the future are

much better than the average defendant. He has a bachelor's degree and is working on a master's degree. He has worked in several businesses and throws himself into his work. He is presently employed. (PSR ¶ 33.) He certainly impressed both the agents and government counsel as a likeable person with a good attitude who could lead a productive life in the future. He is much less likely than the typical defendant to be involved in criminal activity after he gets out of prison.

### D. But within the 3553(a) factors, we still have to consider the offense conduct:

That being said, the defendant was still responsible for setting up and running a sophisticated marijuana production facility involving thousands of plants and capable of four complete crops per year. It produced hundreds of pound of finished marijuana product with an average wholesale sales value of at least $2,000 per pound. He was paid $50,000 per year. Like his codefendants, he knew it was still illegal under federal law but decided to take the risk. So, while a downward variance is appropriate to avoid disparity in sentences, defendant Duncan's sentence should still reflect the seriousness of the offense conduct.

## VI. CONCLUSION

The Presentence Report correctly assessed the two points for the defendant's leadership role in the offense. The "maintaining a place" enhancement is a much closer call and the government recommends that it not be assessed. However, if it is assessed, the Court should recognize that it's "soft" assessment given the circumstances. Finally, mitigating circumstances may warrant a downward variance using the factors contained in § 3553(a). The government will make its overall sentence recommendation at the sentencing hearing.

Dated: December 16, 2013
BENJAMIN B. WAGNER
United States Attorney

/s/ Richard J. Bender
RICHARD J. BENDER
Assistant United States Attorney